25CA0136 Peo v Top Dollar Pawn 07-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0136
El Paso County District Court No. 22CR3298
Honorable David A. Gilbert, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Top Dollar Pawn, LLC,

Defendant-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE LIPINSKY
Yun and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

---

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Haddon, Morgan & Foreman, P.C., Jeffrey S. Pagliuca, Adam Mueller, Jacob B.
McMahon, Denver, Colorado, for Defendant-Appellant

¶ 1    Top Dollar Pawn, LLC appeals the district court's order awarding the Colorado Springs Police Department (the Department) $37,152 in restitution for the Department's cost of acquiring storage containers to hold the substantial amount of stolen goods seized from Top Dollar.  We affirm.

## I.    Background

¶ 2    A grand jury indicted Top Dollar and four individuals (the individual defendants) who were actively engaged in Top Dollar's business on one count of violating the Colorado Organized Crime Control Act (COCCA), one count of theft, and twenty-seven counts of money laundering.  In support of the COCCA count, the prosecution alleged that the individual defendants knowingly purchased stolen items, resold those items in Top Dollar's stores or online, and used the laundered funds to operate Top Dollar and buy more stolen property.

¶ 3    Top Dollar pleaded guilty to the COCCA count in exchange for dismissal of the remaining counts against it.  As relevant here, Top Dollar stipulated to causation for restitution purposes.  The district court imposed a $25,000 fine and set a hearing to address Top

Dollar's objection to the prosecution's request that the court order Top Dollar to pay $37,152 in restitution to the Department.

¶ 4      At the restitution hearing, the Department's evidence manager explained that her job included ensuring there is sufficient space to store evidence collected during the Department's investigations. She said that the Department's facilities only "have storage space for the typical amount that we get from a case."

¶ 5      The evidence manager further testified that the Department's facilities were insufficient to accommodate the extensive amount of stolen goods seized from Top Dollar, and, for that reason, the Department was required to purchase four storage containers and rent four additional containers to hold the stolen goods. She explained that the Department used the rented containers as overflow storage until it could organize the stolen goods and condense them into the purchased containers.

¶ 6      Further, the evidence manager agreed that storing evidence collected during a criminal investigation into theft and fencing was a function of the Department's normal course of business. But she explained that, during her twenty-one years working for the Department, she never before had to acquire containers to store

2

evidence collected in a single case, and that, but for the stolen goods seized from Top Dollar, she would not have needed to obtain the additional containers.

¶ 7 In addition, the evidence manager testified that if the Department had rented rather than purchased containers to store the stolen goods, the Department would have paid approximately $95,000. The evidence showed that the Department incurred $37,152 by purchasing the four containers and temporarily renting the four other containers.

¶ 8 Top Dollar asserted that the Department's costs for obtaining the storage containers were not recoverable as restitution. The district court disagreed and granted the prosecution's restitution request.

¶ 9 The district court found that the Department would not have needed to store such a large volume of evidence absent Top Dollar's criminal activity and that the Department's solution "was a reasonable way . . . to approach the problem of the amount of items that it found itself laden with, that it would be required to store for purposes of a trial, for purposes of this case." The court found that "this was an extraordinary situation where the [D]epartment . . .

3

made a reasonable economic decision to purchase some of those [containers] and to rent some other of those [containers]" and said that the restitution statute "makes clear that when you have this type of situation where [a] police department determines the only way to carry out [its] responsibility is to purchase large containers, and/or rent large containers, then that's what they'll do."

## II.     Restitution Statute

¶ 10     Every order of conviction must include consideration of restitution.  § 18-1.3-603(1), C.R.S. 2025; *People v. Weeks*, 2021 CO 75, ¶ 3, 498 P.3d 142, 147-48.  Restitution is generally defined as "any pecuniary loss suffered by a victim."  § 18-1.3-602(3)(a), C.R.S. 2025.

¶ 11     In restitution cases, "[t]he prosecution must prove by a preponderance of the evidence that the defendant's conduct proximately caused the victim's loss and the amount of that loss." *People v. Babcock*, 2023 COA 49, ¶ 19, 535 P.3d 981, 987, *aff'd*, 2025 CO 26, 569 P.3d 850.  Proximate cause means that an event "in the natural and probable sequence of things . . . produced the claimed injury."  *Martinez v. People*, 2024 CO 6M, ¶ 30, 542 P.3d

675, 682 (quoting *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1327 (Colo. App. 1992)).

¶ 12 "[W]hen a law enforcement agency 'does not fall within the defining scope of the underlying criminal statute as a primary victim,' its pecuniary losses cannot be recompensed as restitution unless the legislature has 'specifically enumerate[d]' them 'within the restitution statute.'" *People v. Hollis*, 2025 CO 54, ¶ 21, 576 P.3d 147, 152 (quoting *People v. Padilla-Lopez*, 2012 CO 49, ¶ 11, 279 P.3d 651, 654). As relevant here, the General Assembly specified that restitution includes "money advanced by law enforcement agencies," § 18-1.3-602(3)(a); "extraordinary direct public and all private investigative costs," § 18-1.3-602(3)(b); and "costs incurred by a government agency . . . to . . . [s]tore . . . evidence of a controlled substance violation," § 18-1.3-602(3)(c)(I)(B).

¶ 13 For purposes of restitution, a "[v]ictim" is "any person aggrieved by the conduct of an offender," § 18-1.3-602(4)(a), including "[a]ny person who had to expend resources for the purposes described in paragraphs (b), (c), and (d) of subsection (3) of this section," § 18-1.3-602(4)(a)(VI). Because the restitution

statute does not define "person," we apply the word's general statutory definition: "any individual, corporation, *government or governmental subdivision or agency*, business trust, estate, trust, limited liability company, partnership, association, or other legal entity." § 2-4-401(8), C.R.S. 2025 (emphasis added); *see also Dubois v. People*, 211 P.3d 41, 45-46 (Colo. 2009) (applying section 2-4-401(8) when interpreting the restitution statute).

## III.   Standard of Review

¶ 14    We review for clear error the factual findings underlying a court's restitution order. *Martinez*, ¶¶ 3, 21, 32, 542 P.3d at 678, 680, 682-83. Under the clear error standard, we must affirm the court's findings unless they lack record support. *Id.* at ¶ 34, 542 P.3d at 683.

¶ 15    In addition, "[w]e review questions of law involving statutory interpretation de novo." *People v. Gallegos*, 2013 CO 45, ¶ 7, 307 P.3d 1096, 1099; *People v. Le*, 2022 COA 32, ¶ 15, 512 P.3d 146, 148-49.

## IV.   Undeveloped Arguments

¶ 16    As a threshold matter, we note that, throughout its opening brief, Top Dollar makes conclusory statements regarding the

underlying proceeding and the restitution order. These include Top Dollar's assertions that the prosecution did not file a restitution motion and that the Department created the storage problem because there was no legitimate need for it to retain all the stolen goods seized from Top Dollar.

¶ 17     We do not address these arguments because they are neither developed nor supported by legal authority. *See* C.A.R. 28(a)(4), (a)(7)(B); *People v. Liggett*, 2021 COA 51, ¶ 53, 492 P.3d 356, 365 (declining to address the defendant's "additional but cursory" challenges because they were presented "without sufficient development of the argument for us to decide the issue"), *aff'd*, 2023 CO 22, 529 P.3d 113.

V.     The District Court Did Not Err by Ordering
Top Dollar to Pay Restitution in
the Amount of the Department's Storage Costs

¶ 18     Top Dollar contends that the district court erred by ordering it to pay restitution to the Department because (1) Top Dollar's conduct did not "aggrieve[]" the Department and (2) the storage costs that the Department incurred to hold the stolen goods seized from Top Dollar do not constitute "money advanced by law enforcement agencies" or "extraordinary" direct public investigative

7

costs. Top Dollar specifically asserts that the Department's storage costs do not fall within section 18-1.3-602(3)(a)'s reference to "money advanced by law enforcement agencies," *see Hollis*, ¶¶ 20-37, 576 P.3d at 151-54, and that the Department's expenditure of funds to store the stolen goods seized from Top Dollar does not mean that Top Dollar's conduct "aggrieved" it, *see Padilla-Lopez*, ¶ 18, 279 P.3d at 655.

¶ 19    But we need not address these arguments because (1) we are convinced that the Department's expenditure of funds to acquire containers to store the significant amount of stolen goods seized from Top Dollar is recoverable under section 18-1.3-602(3)(b); and (2) as the party that expended the moneys for such purpose, the Department is a "victim" for purposes of section 18-1.3-602(4)(a)(VI).

¶ 20    Importantly, Top Dollar concedes in its appellate briefs that the storage costs are "investigative" and argues only that they were not "extraordinary." Accordingly, we offer no opinion on whether the Department incurred the costs for investigative purposes; we assume that the Department did so. *See People v. Lulei*, 2026 CO 17, ¶¶ 28-29, 586 P.3d 184, 194 (Under the party presentation

8

principle, "courts 'rely on the parties to frame the issues for decision'" because we presume "that the parties know what is best for them[] and are responsible for advancing the facts and arguments entitling them to relief"; therefore, "[f]idelity to the party presentation principle . . . generally precludes a court from spontaneously deciding an issue that the parties have not raised or had the opportunity to address." (quoting *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008))).

¶ 21    We now turn to Top Dollar's developed arguments. In two recent decisions, the Colorado Supreme Court analyzed whether a law enforcement agency is entitled to recover certain investigative costs under the "extraordinary direct public and all private investigative costs" prong of section 18-1.3-602(3)(b).

¶ 22    In *Teague v. People*, the supreme court held that a law enforcement agency's payment for a sexual assault nurse examiner (SANE) examination was an extraordinary restitution cost recoverable under section 18-1.3-602(3)(b). 2017 CO 66, ¶¶ 2, 16, 395 P.3d 782, 783, 786. As part of its analysis, the court looked to the dictionary definition of "extraordinary" — "'more than ordinary,' 'not of the ordinary order or pattern,' and 'going beyond what is

usual, regular, common, or customary.'" *Id.* at ¶ 15, 395 P.3d at 786 (quoting Webster's Third New International Dictionary 807 (2002)). Applying this definition, the court noted that SANE examinations serve "not only as an evidence-gathering tool for law enforcement but also as a source of comprehensive care for victims." *Id.* at ¶ 12, 395 P.3d at 785. "This dual nature . . . separates SANE exams from more workaday investigative processes and renders them not simply extraordinary, but unique." *Id.* at ¶ 16, 395 P.3d at 786.

¶ 23 The supreme court reached a different result in the second recent case. In *People v. Hollis*, the court concluded that losses associated with use of "buy money" to conduct an undercover drug transaction were not extraordinary because, in 2025, an officer's payment of buy money during a drug investigation was "certainly not beyond what is usual, regular, common, or customary." 2025 CO 54, ¶¶ 43, 45, 576 P.3d 147, 155-56.

¶ 24 In *Teague* and *Hollis*, the supreme court focused on the extraordinary nature of the investigative activity to determine whether the costs at issue were extraordinary. *See Teague*, ¶ 16, 395 P.3d at 786. In neither case did the supreme court consider

10

the issue presented here — whether a law enforcement agency may recover restitution in the form of an extraordinarily large amount of expenses that the agency reasonably incurred for a "usual, regular, common, or customary" category of investigative activity. *Id.* (quoting Webster's Third New International Dictionary at 807).

¶ 25    In this case, we agree with Top Dollar that, because storing evidence is not an extraordinary investigative measure, the associated costs would not be deemed extraordinary based solely on the type of investigative activity for which the costs were incurred. *See Hollis*, ¶ 42, 576 P.3d at 155; *Teague*, ¶ 16, 395 P.3d at 786. But our inquiry does not end here.

¶ 26    We read the plain language of section 18-1.3-602(3)(b) to allow for restitution awards when the *amount* of investigative costs is "extraordinary," even if the costs were expended for an ordinary *category* of investigative activity. *See Cowen v. People*, 2018 CO 96, ¶ 12, 431 P.3d 215, 218 (When interpreting a statute, "[t]he starting point in this endeavor is to examine the plain meaning of the statutory language. . . . Consequently, if the language in a statute is clear and unambiguous, we give effect to its plain meaning and look no further.").

11

¶ 27　　We acknowledge Top Dollar's argument, without the benefit of legal support, that neither the district court nor the People articulated a meaningful analytical framework for determining when ordinary storage costs rise to the level of extraordinary and are thus recoverable under section 18-1.3-602(3)(b).  Top Dollar argues that the absence of a clear demarcation line between ordinary and extraordinary cost amounts creates uncertainty and an incentive for law enforcement agencies to overspend on ordinary costs at the expense of defendants ordered to pay restitution.  Because we do not consider undeveloped arguments, *see Liggett*, ¶ 53, 492 P.3d at 365, we do not reach the merits of Top Dollar's line-drawing argument.

¶ 28　　Nevertheless, we do not mean to suggest that the amount of money expended on an ordinary investigative activity is, by itself, dispositive of whether the costs are extraordinary.  Instead, the inquiry must focus on whether the investigative activity's costs are "'more than ordinary,' 'not of the ordinary order or pattern,' and '. . . beyond what is usual, regular, common, or customary.'"  *Teague*, ¶ 15, 395 P.3d at 786 (quoting Webster's Third New International Dictionary at 807).

¶ 29    Moreover, when applying section 18-1.3-602(3)(b), courts must consider, as in other restitution contexts, the reasonableness of the extraordinary investigative cost and the causal connection between the cost and the underlying criminality. *See Martinez*, ¶ 27, 542 P.3d at 681 (In assessing proximate cause, the fact finder must determine whether the underlying facts "constitute the 'natural and probable sequence [that] produced the claimed injury,' based on 'the common sense consideration of the risks created by various conditions and circumstances' and 'the policy consideration of whether a defendant's responsibility should extend to the results in question.'" (citations omitted)); *see also People v. Shifrin*, 2014 COA 14, ¶ 87, 342 P.3d 506, 522 (holding that a court must use a reasonable method to calculate an amount of restitution); *People v. Stafford*, 93 P.3d 572, 575-76 (Colo. App. 2004) (when a defendant causes the loss of property, the court can consider, in certain situations, the reasonable replacement value for the property when awarding an amount of money that will make the victim whole). And, as explained above, the prosecution must prove reasonableness and causation by a preponderance of the evidence. *See Babcock*, ¶ 19, 535 P.3d at 987.

¶ 30    We are convinced that the record in this case supports the district court's finding that the Department's costs of renting and purchasing the storage containers were indeed extraordinary. Although the evidence manager agreed that storing a "typical" amount of evidence is a common police function, she also said that, during her twenty-one years working for the Department, it had never been required to spend so much money to acquire additional space to store evidence collected in a single case. The manager's testimony thus demonstrates that the Department's costs associated with storing the unusually large amount of evidence collected in this case were neither common nor customary of its usual practice.

¶ 31    The district court also found that the Department's acquisition of the storage containers was "a reasonable way" for it to store the unusually large amount of evidence in anticipation of Top Dollar's trial, despite the cost of the containers. *See Martinez*, ¶ 34, 542 P.3d at 683. As noted above, Top Dollar does not present a developed challenge to this finding. *See Liggett*, ¶ 53, 492 P.3d at 365. In addition, Top Dollar does not explain why, as it suggests,

the Department did not need to retain all the stolen goods before the trial in this case.

¶ 32     So we conclude that the record supports the district court's findings that the Department's storage costs were extraordinary and that Top Dollar's criminal conduct proximately caused the Department to incur those costs.  And because the Department expended the extraordinary costs to acquire the containers, the Department falls within the definition of "victim" under 18-1.3-602(4)(a)(VI).

¶ 33     In addition, Top Dollar asserts that, under the canon of statutory construction known as *expressio unius est exclusio alterius*, section 18-1.3-602(3)(c)(I)(B)'s reference to "costs incurred by a government agency or private entity to . . . [s]tore, preserve, or test evidence of a controlled substance violation" means that the General Assembly intended to exclude from restitution awards the cost of storing all other types of evidence.  We are not persuaded.

¶ 34     Under this rule of interpretation, "the inclusion of certain items implies the exclusion of others."  *Beeghly v. Mack*, 20 P.3d 610, 613 (Colo. 2001).  But the canon "applies only when [a] list is exhaustive," and "it must yield where its application would render

15

other statutory language meaningless." *Johnson v. Sch. Dist. No. 1*, 2018 CO 17, ¶ 17, 413 P.3d 711, 716.

¶ 35    The General Assembly intended for "restitution [to] be ordered, collected, and disbursed to the victims of crime and their immediate families" and mandated that the restitution statute "be liberally construed to accomplish . . . such purpose[]." § 18-1.3-601(2), C.R.S. 2025.  Moreover, section 18-1.3-602(3) consistently states that restitution "includes" the enumerated losses.  *See People v. Rieger*, 2019 COA 14, ¶ 14, 436 P.3d 610, 613 (The word "includes" "'denotes that the examples listed are not exhaustive or exclusive,' but only illustrative." (citation omitted) (quoting *Preston v. Dupont*, 35 P.3d 433, 439 (Colo. 2001))).  The plain language of section 18-1.3-602(3)(c)(I)(B) reflects the General Assembly's intent to permit law enforcement agencies to recover through restitution awards their costs incurred in "[s]tor[ing], preserv[ing], or test[ing] evidence of a controlled substance violation," even if the amount of such costs is not extraordinary.

¶ 36    Thus, because the application of *expressio unius est exclusio alterius* to the statutory definition of restitution would undermine the General Assembly's intent reflected in the plain language of

subsections (3)(b) and (3)(c)(I)(B), and because the statute's enumerated list of recoverable costs is not exhaustive, we conclude that the canon does not preclude a court from awarding as restitution a law enforcement agency's extraordinary cost of storing a large volume of stolen goods unrelated to a controlled substance offense.

¶ 37    Lastly, Top Dollar argues that the district court's restitution award was improper for the additional reason that the court ordered Top Dollar to pay a surcharge of $9,250 pursuant to section 24-4.2-104(1)(a)(I), C.R.S. 2025, in addition to the restitution award.  Such surcharges are applied toward the judicial district's "victims and witnesses assistance and law enforcement fund." *Id.*  The proceeds of these surcharges can be applied toward law enforcement agencies' "purchase of equipment, training programs, and additional personnel," among other purposes. § 24-4.2-105(2), (3), C.R.S. 2025.  Top Dollar appears to suggest that the district court ordered it to reimburse the Department twice for the cost of the storage containers — once through the restitution award and once through the surcharge.

17

¶ 38    But while there are certain enumerated circumstances when a defendant is entitled to a setoff against a restitution award, *see* § 18-1.3-603(6), (8), Top Dollar does not sufficiently develop the apparently novel argument that a surcharge can be used as a setoff against a restitution award.  *See Liggett*, ¶ 53, 492 P.3d at 365; *see also People v. Gregory*, 2019 COA 184, ¶ 25, 469 P.3d 507, 512 (noting that the defendant bears the burden of proving a setoff against a restitution order).  It is the role of the General Assembly, and not this court, to make the public policy decision as to whether restitution awards and surcharge proceeds can be applied toward the same categories of costs.  "[W]e will not second-guess the policy preferences of the legislature." *Prairie Mountain Publ'g Co., LLP v. Regents of Univ. of Colo.*, 2021 COA 26, ¶ 25, 491 P.3d 472, 477.

¶ 39    And, even if a setoff is permitted, Top Dollar does not argue that storage containers fall within the category of "equipment" or that the Department's cost of the storage containers was the type of expense for the benefit of crime victims for which the proceeds of the section 24-4.2-104(1)(a)(I) surcharge can be applied under section 24-4.2-105(3).  And Top Dollar does not show that the Department received any portion of its surcharge.  Indeed, it is

18

unclear whether the surcharge proceeds can be used to reimburse a law enforcement agency for past expenses. *See* § 24-4.2-105(3) (authorizing the victims and witnesses assistance and law enforcement board to award a grant of money for a law enforcement agency to purchase equipment).

## VI. Disposition

¶ 40 The order is affirmed.

JUDGE YUN and JUDGE SCHUTZ concur.